IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JEFFREY CAMPBELL, | ) |
| Plaintiff, | ) |
| v. | ) 1:13CV479 |
| KANNAPOLIS CITY SCHOOLS BOARD OF EDUCATION, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This matter comes before the Court on Defendant's Motion for Summary Judgment (Doc. #18). For the reasons that follow, the Defendant's Motion will be GRANTED.

I.

Plaintiff worked for Defendant as a Local Area Network ("LAN") Engineer from August 2004 until December 2012. Plaintiff filed the instant action contending that Defendant violated Section 207 of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), by failing to compensate Plaintiff "for hours worked in excess of forty hours in a work week at a rate of not less than one and one-half times his regular rate of pay" during that period of employment. See Doc. #1, ¶¶ 20-22. Through its summary judgment motion, Defendant argues that Plaintiff qualifies as both an exempt computer employee and an exempt administrative employee such that Plaintiff was not entitled to overtime pay and that, therefore, Plaintiff's claim fails as a matter of law. See Doc. #21 at 8.

II.

Summary judgment is proper only when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of any

material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Holland v. Washington Homes, Inc., 487 F.3d 208, 213 (4th Cir. 2007). An issue is genuine if a reasonable jury, based on the evidence, could find in favor of the non-moving party. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Holland, 487 F.3d at 213. The materiality of a fact depends on whether the existence of the fact could cause a jury to reach different outcomes. See Anderson, 477 U.S. at 248. Summary judgment requires a determination of the sufficiency of the evidence, not a weighing of the evidence. See id. at 249. In essence, the analysis concerns "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

III.

The FLSA provides in relevant part as follows:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee received compensation for his employment in excess of the hours above specified at a rate not less than one and one-half the time the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). However, the FLSA includes a number of exemptions from those requirements. Resolving whether a plaintiff falls into one the FLSA's enumerated exemptions involves a mixed question of law and fact. That is, "[t]he question of how the [employee] spent [his] working time . . . is a question of fact . . . [while] [t]he question whether [his] particular activities excluded [him] from the overtime benefits of the FLSA is a question of law .

. . ." Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986). Exemptions under the FLSA "are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960); see also Purdham v. Fairfax Cnty. Sch. Bd., 637 F.3d 421, 427 (4th Cir. 2011) ("However, the Supreme Court has cautioned that the FLSA 'must not be interpreted or applied in a narrow, grudging manner,' Tennessee Coal[, Iron & R.R. Co. v. Muscoda Local No. 123], 321 U.S. [590, 597 (1944)], and that exemptions from FLSA coverage 'are to be narrowly construed against the employers seeking to assert them,' Arnold[, 361 U.S. at 392].").

IV.

The evidence before the Court, viewed in the light most favorable to Plaintiff, reveals that there is no genuine issue of material fact regarding Plaintiff's qualification as an exempt computer employee under the FLSA. An exempt computer employee is:

> any employee who is a computer systems analyst, computer programmer, software engineer, or other similarly skilled worker, whose primary duty is –
>
> (A) the application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software, or system functional specifications;
>
> (B) the design, development, documentation, analysis, creation, testing, or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications;
>
> (C) the design, documentation, testing, creation, or modification of computer programs related to machine operating systems; or
>
> (D) a combination of duties described in subparagraphs (A), (B), and (C) the performance of which requires the same level of skills, and

-3-

> who in the case of an employee who is compensated on an hourly basis, is compensated at a rate of not less than $27.63 an hour.

29 U.S.C. § 213(a)(17); see also 29 C.F.R. § 541.400. Of note, however,

> [t]he exemption for employees in computer occupations does not include employees engaged in the manufacture or repair of computer hardware and related equipment. Employees whose work is highly dependent upon, or facilitated by, the use of computers and computer software programs (e.g., engineers, drafters and others skilled in computer-aided design software), but who are not primarily engaged in computer systems analysis and programming or other similarly skilled computer-related occupations identified in §541.400(b), are also not exempt computer professionals.

29 C.F.R. § 541.401.

Because it is undisputed that Plaintiff's annual salary of "between 60 and $70,000" (Doc. #21-1 (Campbell dep. at 80-81)) satisfies the relevant salary requirements of 29 U.S.C. § 213(a)(17) and 29 C.F.R. § 541.400(b) (see Doc. #21 at 7; Doc. #23 at 9-10), at issue in this case is only whether Plaintiff's "primary duty" satisfies the exemption. "Primary duty" refers to the employee's "principal, main, major or most important duty." 29 C.F.R. § 541.700. "Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." Id. "Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." Id.[1]

---

[1] Plaintiff's brief offers, without citation, that "[u]nder the FLSA,
(continued...)

Application of this framework in the instant case not only weighs in favor of finding Plaintiff's primary duty consisted of the skilled computer work encompassed by 29 U.S.C. § 213(a)(17), but forecloses a reasonable finder of fact from coming to an alternate conclusion. To begin with, the Vacancy Announcement for the LAN Engineer position which Plaintiff filled included the following description of "Nature of Work":

> The [LAN] Engineer is responsible for designing and implementing local area networks in a school environment. Employee supervises the installation, maintenance, and operation of local area networks and associated computer hardware and software. Employee coordinates with the Director of Technology the evaluation [sic] of school system networking needs and recommends improvements and modifications to existing infrastructure. Employee diagnoses and resolves complex local area network issues.

Doc. #19-1 at 4. Under "Illustrative Examples of Work," it provided:

- Installs local area networks including network servers, hubs, routers, workstations, printers and other peripheral devices.

- Operate and maintain local area networks, track significant problems, monitor performance, and perform upgrades to hardware and software as required.

- Install or modify existing installations of networked computer hardware, software, and other components.

- Participates in long and short range technology planning.

---

¹(…continued)
employees who are primarily responsible for the day-to-day operations and functionality of computer networks do not fall into the computer professional exemption." See Doc. #23 at 5. It is not clear that this is an accurate representation of the law. Rather, the proper inquiry appears to be the level of skill and sophistication exhibited by the employee in conducting those activities. Accordingly, if the evidence reveals that Plaintiff exhibited a high level of skill similar to a "computer systems analyst, computer programmer, [or] software engineer" in conducting activities such as those described in subparagraphs (A), (B) and (C) of 29 U.S.C. § 213(a)(17), there does not appear to be any basis to conclude that Plaintiff was non-exempt simply because, on some broad level, his functions can be described as "primarily responsible for the day-to-day operations and functionality of computer networks."

- Collaborates with technical staff at the building level to ensure proper operating procedures are followed for maintaining the integrity of the network.

- Maintains documentation regarding network configuration, operating procedures, and service records relating to network hardware and software.

- Assists in developing and providing training to building level faculty and staff in the proper operation of the local area network.

- Attends classes, seminars, conferences and reviews professional literature to enhance knowledge of trends and developments related to local area network systems.

Id. Furthermore, under "Qualifications," it listed:

- BS in Computer Science or related field; and

- Five years of increasingly responsible experience in a network environment; and

- Certification as a Novell Administrator, Novell Engineer, or Microsoft Engineer preferred; or

- An equivalent combination of above education and experience; and

- To have the knowledge, skills, and abilities listed on the position description . . . .

Id. at 3. Indeed, in applying for the LAN Engineer position, Plaintiff highlighted his certifications as a Certified Netware Engineer (CNE), Microsoft Certified Systems Engineer (MCSE); Cisco Certified Network Professional (CCNP), and Sniffer Certified Professional (SCP). See Doc. #19-2 at 2. Plaintiff also touted his "excellent track record of managing network resources, managing projects, and customer support" and his "four years experience as an analyst at Mecklenburg County IST" whose "network consisted of many WAN connections, about 100 servers, and 3000 users." Id.

Plaintiff concedes that his job title and job description are suggestive of an exempt computer employee (see Doc. #23 at 5); however, as Plaintiff

-6-

points out and the Regulations caution, "[b]ecause job titles vary widely and change quickly in the computer industry, job titles are not determinative of the applicability of [the computer employee] exemption." 29 C.F.R. § 541.400(a). Rather, "whether an employee is exempt is determined by the employee's actual work activities." Cooke v. General Dynamics Corp., 993 F. Supp 56, 61 (D. Conn. 1997); see also Bertrand v. Children's Home, 489 F. Supp. 2d 516, 520 n.1 (D. Md. 2007) (citing same).

Regardless, in the instant case, the evidence of Plaintiff's actual work activities only serves to confirm that Plaintiff's primary duties are of such skill so as to fall within the computer employee exemption. Notably, in Plaintiff's 2011 Performance Review, Plaintiff's goals are identified as follows:

> Provide stable networking environment for business operations.
>
> Provide efficient and reliable access to instructional resources.
>
> Work with Cabarrus County Government IT Department to
>    -Migrate Servers to a high-availability infrastructure
>    -Implement Virtual Desktop Infrastructure plot
>
> Work with staff to ensure that [Defendant] adheres to state and industry technology standards
>
> Acquire additional troubleshooting resources
>    -SYSlog server
>    -comprehensive network monitoring
>    -cable tester and toner
>
> Upgrade network as needed for testing
>    -Update wireless infrastructure to state standards
>    -replace aging equipment as needed

Doc. #20-1 at 3.

Moreover, through his deposition testimony, Plaintiff testified regarding his functions "monitoring not only just the functionality of the [Virtual Private Network ("VPN")], but [] monitoring the servers to make sure they were operating properly", "monitoring the switches and routers . . . just to make

-7-

sure that they were all up and running", and analyzing data to make determinations as to problems regarding network issues. Doc. #21-1 (Campbell dep. at 19-21). Plaintiff stated that it was his responsibility to make sure the schools and related facilities "had access to the network," expounding: "I dealt with the connectivity issues. I was really the only person that could handle the connectivity type problems." Id. (Campbell dep. at 27). Simply put, as Plaintiff acknowledged, Defendant "count[ed] on [him] for the system to be working." Id. (Campbell dep. at 105).

Furthermore, Plaintiff enjoyed a high level of discretion in performing these tasks. Plaintiff testified that Defendant relied on him to do whatever he needed to do to make sure users had access to the VPN. See id. at 8. Plaintiff also testified regarding his ability to work from home and, when asked "when you would go home to work, did you ask anybody if you could do that? Was that ever approved by anybody," Plaintiff responded: "It was pretty clear in my mind that they didn't care what I did, they put the responsibility on me to do whatever I had to do to get my work done." Id. (Campbell dep. at 18). This level of discretion further supports a finding that Plaintiff is the type of employee contemplated by the FLSA exemptions. See 29 C.F.R. § 541.700 (describing "the employee's relative freedom from direct supervision" as a factor to consider when determining the primary duty of an employee).

Other authority interpreting the computer employee exemption is consistent with a finding that an employee whose primary duties are similar to Plaintiff's qualifies for the exemption. In Bobadilla v. MDRC, No. 03 Civ. 9217, 2005 WL 2044938 (S.D.N.Y. Aug. 24, 2005) (unpublished), for example, the plaintiff was hired as a Network Administrator with a salary of $70,000 per year and a $5,000 signing bonus. The plaintiff's resume

-8-

exhibited a focus on Cisco networking, and the plaintiff held a certificate issued by Cisco Systems, a manufacturer of network hardware and software, which entitled him to designation as a Cisco Certified Network Associate.

The defendant in that case classified the Network Administrator position as an exempt position, but classified Help Desk employees as non-exempt. Of note, in comparison to the plaintiff's salary, the average hourly rate for a Help Desk employee was $24 per hour, which translated to about $43,680 per year based on the defendant's standard work week. The Help Desk group consisted of three individuals who assisted the defendant's employees with basic computer problems. "If the Help Desk [was] not qualified to assist a user with a problem or the problem [was] directly related to network devices or 'connectivity,' it [was] allegedly referred to the Network Administrators." Id. at *4.

The plaintiff in Bobadilla argued that, despite his title, he spent roughly sixty percent of his time performing help desk functions, most of which related to connectivity issues with the network. The plaintiff also estimated he spent the remaining 40% of his time "taking one-on-one calls from [the defendant's] California office resolving the same types of issues that went through the Help Desk and working with the rest of his team to provide network services, which included tasks like monitoring servers and backing up files." Id. at *5.

The court rejected the plaintiff's arguments and held that the plaintiff "was principally of value to [the defendant] because he had sophisticated knowledge of computing that went beyond that of non-exempt Help Desk personnel." Id. at *7. The court noted the plaintiff's significantly higher salary than those individuals, and highlighted that the plaintiff "had experience related to network management and held a valuable Cisco [] credential that would

-9-

allow him to develop computer systems based on user specifications." Id. The court also pointed out that "the plaintiff's resume listed experience with designing and implementing networks" and that "the plaintiff was expected to take on more complicated duties [with the defendant] than he had performed in the past." Id. The court further addressed that the plaintiff's job performance rated the plaintiff "in a number of highly technical areas that involved a combination of the computing skills set forth in Section 213(a)(17)." Id. Moreover, the court noted that the plaintiff's current resume "describe[d] a number of sophisticated duties and responsibilities that [the plaintiff] performed at [the defendant], which fall well within the primary duties of a computer employee specified in Section 213(a)(17) and the court ultimately found that "the plaintiff made actual, analytical decisions about how [the defendant's] computer network should function" and concluded that ,"[i]n view of all the evidence, [the plaintiff] performed highly-skilled work on [the defendant's] computer systems and is an exempt computer employee under 29 U.S.C. § 213(a)(17)." Id. at *8, *9.

In Clarke v. JPMorgan Chase Bank, N.A., No. 08 Civ. 2400(CM)(DCF), 2010 WL 1379778 (S.D.N.Y. Mar. 26, 2010) (unpublished), the plaintiff was a member of the defendant's Global Technology Infrastructure and received a salary ranging from $78,850 in 2003 to $101,931 in 2007. Clarke, 2010 WL 1379778, at *3. Before being hired, the plaintiff earned technical certifications as a Certified Novell Engineer and as a Microsoft Certified Systems Engineer. On January 1, the plaintiff's position was reclassified as non-exempt; however, shortly thereafter, on February 1, 2008, the plaintiff was promoted to Vice President, an exempt position. During his employment with the defendant, the plaintiff's duties included "capacity management;

Novell Distributed Print Services [] remediation; resolution of escalated server-related issues; special projects; and the creation and updating of technical manuals." Id. at *4. In fact, "[m]any people at [the defendant] considered [the plaintiff] the go-to person for capacity management in the Northeast region." Id. at *4 (internal quotation marks omitted).

In that case, the court looked to the decision in Bobadilla - which it described as "[o]ne of the few cases in this or any other district to squarely address the FLSA's computer employee exemption," id. at *18 - and ultimately determined that the plaintiff it was addressing was attempting to employ the same tactic as the Bobadilla plaintiff - i.e., "denigrating his duties to make it appear as if he primarily performed lower-level, helpdesk functions." Id. at *19. The court concluded that the plaintiff's "own testimony and the prelitigation documents before the Court clearly establish that he falls within § 213(a)(17)'s computer employee exemption." Id. at *21.

Finally, in Olorode v. Streamingedge, Inc., No. 11 Civ. 6934(GBD)(GJP), 2014 WL 1689039 (S.D.N.Y. Apr. 29, 2014) (unpublished), the plaintiff was employed with the defendant as a Systems Support Analyst with a starting annual salary of $53,000, which, after a probationary period, was increased to $60,000. See id. at *2. The plaintiff's signed employment agreement described his duties as follows:

> Duties include but not limited to systems analysis, software research and development, support, maintenance and testing, networking, and assistance with site installations. In addition, [the plaintiff] shall perform further duties as are incidental, implied from the foregoing, consistent with the background, training, and qualifications of [the plaintiff], or may be reasonably delegated as being the best interests of the Company.

Id. at *3. The plaintiff testified that "his typical daily not only involved . . . troubleshooting problems, virtually from [his] computer [but also] sometimes

-11-

physically . . . observ[ing] the broker . . . or sometimes . . . physical[ly] inspect[ing] . . . their machine, the connection, depending on what nature of the problem they're having." Id. at *22 (ellipsis and alterations in original). In addition, the plaintiff "was responsible for creating new user accounts and giving those users access to certain products to facilitate their trading functions." Id. "He also, from time to time, was required to test new software for functionality." Id. According to the plaintiff, "each morning he would check [the defendant's] systems . . . to ensure that the network was functioning properly." Id.

The court found the evidence of the plaintiff's primary duties consistent with the evidence in Bobadilla and Clarke and concluded that the plaintiff was exempt under the FLSA. The court noted the plaintiff's technical certifications, job description, and the plaintiff's own testimony that "his role was critical to [the defendant's] functionality and that he often engaged in sophisticated tasks in aid of his brokers." Id. at *23. Accordingly, the court concluded that, "as an exempt employee, the plaintiff was paid an annual salary and was not entitled to overtime pay." Id. at *23.

As in those cases, Plaintiff's effort here to recast his role as one resembling a lower-skilled employee falls short. Indeed, Plaintiff's own testimony confirms the skilled nature of his work, especially in comparison to lower-skilled technicians tasked with working on individual desktops:

> Q. So as opposed to [Brian] Effird and [John] Allen, it wasn't within your responsibilities to help fix individual desktops, correct?
>
> A. I did spend a lot of time working on individual desktops. They did the majority of it, but there were times when things would happen where they couldn't come up with the answer. <u>And one of the reasons was because there was a huge knowledge gap</u>. The people, especially the

-12-

administrators, would have administrative access to their computer, meaning they could install any piece of software, anything they wanted to on it, and many times I would get pulled into troubleshooting desktops, <u>even though that wasn't my primary function</u>. But I would get pulled into troubleshooting desktops because those guys would draw a blank. . . .

Q. So, at that time, if a teacher or other personnel had an issue with their desktop computer, an application or something like that, Brian or John would be the guys that were tasked with helping them. But if a problem got outside of their expertise, you would come in to assist; is that right?

A. Yes.

Doc. #21-1 (Campbell dep. at 68-69) (emphasis added). That those employees earned significantly less than Plaintiff (see Doc. #19, ¶ 18) further evidences the value Defendant placed on Plaintiff's broader abilities. See 29 C.F.R. § 541.700 (listing "the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee" as a factor to consider when determining the primary duty of an employee).

Plaintiff argues that, unlike here, "[t]he plaintiffs in Clarke and Bobadilla didn't just have [technical] certifications; they performed tasks that made these certifications necessary." Doc. #23 at 8.[2] According to Plaintiff's brief, his "position did not require him to have or maintain these certifications." Id. at 8. In this regard, Plaintiff highlights his testimony that he allowed his technical certifications to lapse during his employment with Defendant "because . . . the school district didn't see them as valuable other than using them as a way to hire people [and because] they didn't want to pay for them and they didn't want to send [him] to the classes to keep them up." See 21-1 (Campbell dep.

---

[2] The decision in Olorode had not been issued prior to Plaintiff filing his Response.

-13-

at 51). Accordingly, Plaintiff argues that this case more closely resembles Sethi v. Narod, 974 F. Supp. 2d 162 (E.D.N.Y. 2013), in which the court noted: "Although technical credentials and certifications are relevant to an assessment of an employee's qualification for the exemption and [the plaintiff] had many, it is not clear [the plaintiff's] certifications were necessary to obtain the job or utilized in [the plaintiff's] work at [the defendant]." Id. at 180.

The evidence here, however, does not demonstrate that, as Plaintiff appears to argue, his technological certifications were extraneous to his employment with Defendant. In fact, when asked whether his technical certifications were required for obtaining employment with Defendant, Plaintiff testified: "I don't know that they were required, but they were – we would have to look at the vacancy announcement to see what it says, but I believe if they weren't required they were certainly preferred or encouraged." See Doc. #21-1 at 12. Furthermore, regardless of the exact application of each individual certification possessed by Plaintiff to his employment, the record evidence establishes the skilled nature of Plaintiff's work and Plaintiff's value for his ability to perform such skilled work during his employ with Defendant. Moreover, the same inconsistencies present in Sethi do not appear in the instant action. In that case, the defendant attempted to simultaneously argue that the plaintiff was an exempt computer employee and that the defendant "had no knowledge regarding [the defendant's] database on web servers by the end of his tenure [with defendant]." Sethi, 974 F. Supp. 2d at 181 (internal quotation marks omitted). Here, on the other hand, Plaintiff's own testimony and pre-litigation documents reflect a high level of involvement with and knowledge of Defendant's network infrastructure.

-14-

Plaintiff offers other contentions for finding him a non-exempt employee that are similarly unpersuasive. For example, Plaintiff argues that his role in two major projects cited by the Defendant -- the transition to from Novell to Microsoft and the modification of the iPrism Web security filter -- was minimal, but his deposition testimony describes work which carried far more responsibility. Doc. # 23 at 7. While Plaintiff contends that his former supervisor Brenda McCombs was in charge of the transition of the network from Novell to Microsoft and that he "hardly did anything on that project," he testified that the transition from Novell to Microsoft was his idea and that he "took responsibility for all" of the Novell system management while the Microsoft transition took place. Doc. # 23-1 (Campbell dep. at 62). Plaintiff describes the transition to Microsoft as a project where two other employees worked on the Microsoft end of the transition while Plaintiff maintained Novell; thus, his depiction of his role in the Microsoft transition does not adequately consider his involvement in the transition.

Similarly, Plaintiff uses phrases like "I was … doing what I was told" to describe his work on modifying the iPrism web security filter, which controlled Web content coming into the school system servers. Doc. # 23-1 (Campbell dep. at 59); Doc. # 23-2 (Campbell dep. at 61). However, Plaintiff's testimony about his actual work on the problems with the filter is in fact consistent with his role as the primary person responsible for correcting the many problems with the filter. In addition to testifying that "everybody looked to [him] to be the primary person on this web filter" (Doc. 21-1 (Campbell dep. at 56)) and that he was "being told he's responsible for it" (Doc. #23-1 (Campbell dep. at 26)), Plaintiff's description of his efforts to correct the issues with the filter and the time he spent doing so are also consistent with his role as the primary

-15-

person responsible for the problems that arose with iPrism while he was employed with Defendant. See Doc. #21-1 (Campbell dep. at 56-57). Indeed, Plaintiff's testimony demonstrated extreme frustration over McComb's management of access to the filter and other decisions made by McCombs which complicated Plaintiff's task of getting the filter to work properly. See Doc. #23-3 (Campbell dep. at 58); Doc. #23-1 (Campbell dep. at 59). That Plaintiff's ability to perform tasks may have been restricted by the decisions of others does not suggest that his level of responsibility was diminished, and his efforts to minimize his role in this regard are unpersuasive.

Plaintiff's further arguments, which point to tasks performed by Plaintiff that may more closely resemble less skilled, and therefore non-exempt, work, are likewise insufficient to overcome the other record evidence of Plaintiff's primary duty. That is, in sum, Plaintiff was hired for the position of LAN Engineer, a position whose description highlighted specific networking abilities and qualifications, and Plaintiff, in fact, possessed qualifications commensurate with that role. Pre-litigation documents reflect Plaintiff's own goals were equally focused on the development and maintenance of Defendant's network infrastructure. Plaintiff testified regarding his responsibilities ensuring network connectivity, indicated that he alone had those abilities, explained that other individuals were responsible for more individualized desktop issues, and conceded his own superior knowledge and broader scope of employment than those individuals. Plaintiff enjoyed wide discretion in completing his tasks, and was compensated with an annual salary well above the minimum required to qualify him as an exempt employee under the FLSA (and, in fact, well above those responsible for less skilled tasks). Under these circumstances, despite Plaintiff's arguments to the contrary, it is clear that Plaintiff's "primary duty"

consisted of a combination of the responsibilities described in subparagraphs (A), (B), and (C) of 29 U.S.C. § 213(a)(17). Accordingly, there is no genuine issue of material fact and Defendant is entitled to judgment as a matter of law.[3]

V.

For the reasons set forth above, Defendant's Motion for Summary Judgment (Doc. #18) is GRANTED.

This the 23rd day of September, 2014.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge

---

[3] Because Plaintiff qualifies as an exempt computer employee, there is no need to address whether Plaintiff would also qualify as exempt under the administrative or combination exemptions.